UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
CHRISTOPHER IMMEL,                 :

                    Petitioner,    :    REPORT AND RECOMMENDATION

          - against -             :    03 Civ. 1893 (CM) (MDF)

GARY FILION, Superintendent of     :
Coxsackie Correctional Facility,
and THE ATTORNEY GENERAL OF THE   :
STATE OF NEW YORK,
                                   :
                    Respondents.
----------------------------------X

TO:  THE HONORABLE COLLEEN MCMAHON, U.S.D.J.

     In a previous memorandum order in this matter (doc. #7), I
granted Petitioner's application to relieve his attorney and
granted him leave to file an amended Petition with instructions.
The instructions specified that Petitioner should address issues
concerning the exhaustion of state remedies and procedural
default with respect to any claim(s) he raised.  As I
anticipated, in its opposition to the amended Petition the State
has invoked procedural default as to Petitioner's claims.  As a
result, Petitioner predictably has moved for the appointment of
counsel and to conduct discovery to prove that his guilty plea
was the result of pressure exerted by his attorney whose motive
was to seek the office of District Attorney of Orange County.  He
attributes alleged failings and other allegedly unprofessional
behavior to this motive and relies upon a self-serving
declaration of his own innocence to overcome the procedural
defaults.  As the amended Petition supersedes the original
pleading, see Brown v. Rick, 01 Civ. 4310 (DC) (S.D.N.Y. Nov. 25,

2003) (2003 Westlaw 22801397 at *3 n. 3); <u>Donato v. Senkowski</u>, 97
Civ. 0606 (N.D.N.Y. Oct. 31, 2000) (2000 Westlaw 33743377 at *1),
and thereby effectively commences the case, I turn to the Amended
Petition, doc. #8.

Petitioner seeks a writ of habeas corpus to challenge his
conviction, by guilty plea, to one count of robbery in the first
degree (N.Y. Penal Law §160.15).  The Orange County Court, Judge
Rosenwasser, sentenced Petitioner to a term of fifteen (15) years
imprisonment, restitution of $7,613.61 and three (3) years of
post release supervision.  On direct appeal Petitioner raised
only one issue.  Citing only the federal case of <u>Boykin v.
Alabama</u>, 395 U.S. 238 (1969) and relevant decisions from state
courts, Petitioner contended that his plea was not knowing,
intelligent or voluntary.  Having relied on a plea bargain which
did not mention restitution and a waiver of appellate rights
which also did not mention restitution, Petitioner argued that
the silence about restitution in these documents had led him
reasonably to believe that he would not have to pay restitution.
In a brief order, the Appellate Division, Second Department found
that Petitioner's contention that the state trial court had
breached the plea agreement by imposing restitution was not
preserved for appellate review and otherwise without merit and
affirmed the conviction.  <u>People v. Immel</u>, 288 A.D.2d 235, 732
N.Y.S.2d 359 (2d Dep't 2001), <u>lv. denied</u>, 97 N.Y.2d 683, 738
N.Y.S.2d 298 (2001).

The exhaustion aspects of this case proceeded on what appear

2

to be separate and independent tracks.  Before the Appellate
Division disposed of the direct appeal, Petitioner, <u>pro</u> <u>se</u>, moved
in the state trial court, pursuant to N.Y. Crim. Proc. Law
§440.10, to set aside the plea as the product of ineffective
assistance of defense counsel, Risa Sugarman.  Resp. Exh. 6.  In
sum, Petitioner, then seventeen (17) years of age, had advised
Sugarman of the circumstances of his arrest and custodial
interrogation (he was intoxicated and the police assaulted him
during lengthy questioning), and allegedly Sugarman did nothing
to preserve the issue concerning the interrogator's advice that
if Petitioner first talked to the police, he would be able to
call his mother.  The significance of this issue escapes me
because Petitioner was not a juvenile at the time.  Petitioner
also took issue with counsel's advice concerning the likelihood
of a successful outcome given the ethnicity of those arrested and
charged along with him, her advice that he would never win in
Orange County and her alleged failure to investigate the case.
Through her tactics, counsel allegedly "coerced" Petitioner to
change his plea.  The state trial court found that Petitioner's
allegations lacked merit and denied the motion in a brief
decision.  Resp. Exh. 9.  Thereafter the Appellate Division,
Second Department, Justice Santucci, denied leave to appeal on
June 13, 2001.  Resp. Exh. 10.

Following the direct appeal, Petitioner, represented by
counsel, submitted a second post conviction application pursuant
to N.Y. Crim. Proc. Law §440.10.  Apparently the motivation for

3

this motion, which reiterated the claim raised on direct appeal
and added a claim of  ineffective assistance of counsel arising
from Sugarman's having failed to object to the restitution, was
the Appellate Division's finding that the issue concerning
restitution had not been preserved for appellate review.  Citing
state cases, Petitioner reasoned that this finding amounted to an
indication that a post conviction application was the appropriate
vehicle to present his claim.  Resp. II Exh. 15 at 2 ¶4.  The
state trial court did not agree.  The issue concerning
restitution had been raised on direct appeal and therefore was
not cognizable.  §440.10 subd. 2(a).  The facts supporting the
claim that trial counsel had been ineffective for failing to
object to the imposition of restitution had been part of the
record on direct appeal, and therefore the failure to raise the
claim on direct appeal precluded review of it.  §440.10 subd.
2(c).  The claim concerning restitution related solely to
Petitioner's sentence, and therefore was not reviewable in this
application.  §440.10 subd. 2(d).  The facts supporting
Petitioner's claims had been available to support his first
motion.  §440.10 subd. 3(c).  And finally, there was no showing
of ineffective assistance of counsel because Petitioner had
received less than the maximum of twenty (20) years imprisonment
allowed under the plea agreement.  Thereafter the Appellate
Division, Second Department, Justice Santucci, denied leave to
appeal on August 14, 2002.  Resp. Exh. 18.

The plea disposed of a sixteen (16) count indictment, which

4

alleged robbery in the first degree and lesser included offenses
against three (3) separate victims, criminal possession of the
weapon used to effectuate each robbery and, perhaps ironically,
one count of an offense for which Petitioner was unquestionably
guilty, reckless driving.  Turning to the transcript of the plea,
the state trial court explained and Petitioner acknowledged
understanding the rights that were being waived.  The plea was
not the result of force, coercion or threats from anyone.
Petitioner had had enough time to consider the plea, had
discussed it adequately with his attorney and was satisfied with
the representation he had received.  During the allocution, in
response to questions from the state trial court Petitioner
admitted that on the date in issue he, driving the escape
vehicle, and two others went to the parking lot of a McDonald's
in Middletown.  Petitioner remained in the car.  He observed the
end of a robbery in which one of his companions had stolen a
pocketbook from a woman and then all three escaped because he
drove them away.  In this same incident, the bandits also robbed
the woman's husband of his wallet.  Prior to arriving at the
McDonald's, his companions had told Petitioner that a robbery was
going to occur.  Under questioning by the prosecutor, Petitioner
stated that he had learned of the extent of the damage and
violence involved afterwards from his lawyer.  Although he had
not witnessed the event, Petitioner did not dispute that one of
his co-defendants had smashed the windshield of the victims'
vehicle so hard that glass had torn the female victim's retina,

which injury had required surgery and had resulted in a permanent impairment.

In an affidavit dated September 20, 2003, which accompanies the amended petition as an exhibit, Petitioner sets forth facts partially and meaningfully at odds and divergent with his testimony at the guilty plea proceeding.  On September 27, 1999 at about 6:00 p.m. Petitioner borrowed a friend's automobile, picked up co-defendants, Antonio Boynton, Daniel Wade and Johnny Harris and drove around in search of parties in Monticello and Middletown.  Eventually, at about 9:30 p.m. they went to the Galleria Mall in Middletown until it closed and then while he and Boynton obtained fuel, Harris and Wade went across the street to call Harris' girlfriend.  They returned in about five minutes. So far so good, although the details concerning prior knowledge of what was going to happen are conspicuous by their absence.  At 10:30 p.m. a divergence of opinion concerning what to eat resulted in Petitioner's dropping off Wade and Harris at a McDonald's restaurant while he and Boynton went to Park Circle. When they returned to the McDonald's, Wade and Harris were standing about twenty (20) feet from two people who were screaming that they had just been robbed.  When Wade and Harris got in the car and Petitioner drove out of the McDonald's parking lot, he observed a lot of flashing lights, and, because he was only then seventeen (17) years of age and operating a motor vehicle unlawfully at night with only a learner's permit, ignored a stop sign and sped away from the scene with the police in hot

6

pursuit.  For an unexplained reason, the number of police vehicles motivated him to stop his vehicle and attempt an unsuccessful flight on foot.  The enclosed area into which he had driven may also have influenced his decision.

Officer Khalil of the Middletown Police Department eventually arrested him and placed him in handcuffs and he was taken to the police headquarters where Sergeant Powers tightened the cuffs, grabbed his throat, squeezed his genitals and drove his head repeatedly into concrete while advising him that he would be sorry for having committed a crime in Middletown and that he would tell the police what they wanted to know.  The interrogation which followed occurred in a basement room from 11:00 p.m. until 8:00 a.m.  Petitioner was repeatedly choked and kicked.  His requests for food, drink, sleep and to consult with his mother or a lawyer were ignored.  At 8:30 a.m. at the behest of Detective Berstein, Petitioner admitted having been behind the wheel and operating his friend's vehicle at the time of the robbery and signed a typewritten statement to that effect. Shortly thereafter, two detectives accused him of lying and at 10:30 a.m. Detective Metakes confronted him with a handwritten statement from Harris who had inculpated Petitioner.  Petitioner responded that the statement was untrue.  At 1:00 p.m. Officer Khalil showed Petitioner a typewritten statement which the police had prepared from the information contained in Petitioner's statement and in Harris' statement.  Petitioner refused to sign it.  Two officers then told him that if he wanted to go home, all

7

he had to do was to sign the statement.  He refused.  At 2:00 p.m., after a total of fifteen (15) hours of abusive interrogation, Petitioner signed the second statement because he was tired and hungry and did not want to be beaten anymore.  He was transported to the Orange County Jail.

At the jail Petitioner informed Nurse Veselyer, who examined him, of his ordeal during the interrogation.  He complained of extensive pain around his mouth and of other injuries.  He overheard the sergeant present tell Veselyer not to take any photographs of him.  On October 3, 1999, Petitioner went to the jail's sick call coughing up blood and experiencing pain in his groin area, all attributable to the assault during the interrogation.

Enter Risa Sugarman, whom Petitioner advised of his innocence immediately and also what had occurred at the police station.  She importuned him to trust her and apparently was otherwise noncommittal.  As proceedings moved forward, she never discussed a defense with him and advised him that he had no defense.  She also told him that there was no evidence against him except the aforementioned signed statements because the victims could not identify their assailants and that nothing could be done about the statements.  Of course, whether the victims could identify their assailants was beside the point because Petitioner's liability was not based on his presence during the event.  As a result of conflicts and arguments, Petitioner and his mother unsuccessfully petitioned the state

8

trial court to relieve Sugarman.

And on the day of the plea, actually the scheduled suppression hearing, April 13, 2000, Sugarman advised him that it would not be a good idea to go forward, that there was nothing in his favor and that the court would believe the police. She assured him that she knew whereof she spoke, having served as an Assistant District Attorney in the Bronx, and told him to trust her. The suppression hearing would only upset the trial judge who would impose the maximum sentence, so Petitioner should start thinking about the future.

At this juncture, I will not feign ignorance of what was coming. Dispositions of criminal matters without trial are considered desirable, and the system has set itself up to encourage those dispositions. A defense attorney who truly believes that the deal is a good one for the client will certainly attempt to sell it and all the more so on the date of the suppression hearing because the offered disposition will not usually improve just prior to jury selection.

So, Sugarman reiterated that the only evidence against him was the statements, which would not be suppressed. Petitioner agreed to waive the suppression hearing. When Sugarman returned to the bullpen and asked if he wanted to take the plea offer, maximum exposure of twenty (20) years, or go to trial, Petitioner chose trial. Wrong answer. Sugarman advised that there was no future in trial because he had been arrested with black people and as a result that he could not win a trial in Orange County.

She added that he faced sixty (60) years to life if convicted after trial.  And then she left and came back with a maximum possible exposure of sixteen (16) years, and that she could probably talk the judge into ten (10) years.  She told him to take the deal or he would get the maximum sentence and would be very old if he were ever released from jail.  Neither she, nor the judge thereafter, discussed restitution.  Petitioner asserts that if he had been advised of the restitution and the correct maximum sentence that he faced, he would not have pled guilty. He adds that he changed his plea because he was tricked and scared.

Despite a "Grounds" section of the amended petition which sets forth two points or headings, the pleading actually presents a total of six (6) claims, four (4) of which allege ineffective assistance of counsel.  Amended Pet. At 8-9 ¶¶42, 45.  Petitioner contends that the plea is invalid because he was unaware that restitution would be imposed, the state trial court breached the plea agreement by imposing restitution and the plea was the result of ineffective assistance of counsel in four (4) specifications: (1) she misinformed him of the maximum exposure that he faced; (2) she misinformed him of the likelihood of a successful outcome of the pretrial suppression hearing and trial; (3) she failed to object to the imposition of restitution and thereby failed to advise him of the option of withdrawing the plea; and (4) she failed to conduct any investigation.  In addition to the evidence which Petitioner has submitted to

10

support his claims, in evaluating the merits of his claims, the Court may rely on the statements he made under oath during the plea allocution. See, e.g., United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001); Garfield v. Poole, 412 F. Supp.2d 608, 615 (W.D.N.Y. 2006).

At the outset, I am persuaded that federal habeas jurisdiction does not permit this court to review the imposition of restitution. In considering a challenge to a restitution order pursuant to 28 U.S.C. §2255, the federal post conviction statute which parallels §2254, the Court of Appeals has held that habeas jurisdiction does not extend to review of an order of restitution, even if the judgment of conviction also includes a custodial punishment. Kaminski v. United States, 339 F.3d 84, 89 (2d Cir.), cert. denied, 540 U.S. 1084 (2003). Section 2254 specifically requires that the petitioner who challenges a state court conviction allege that he is in custody in violation of the Constitution, laws or treaties of the United States. The restitution portion of the judgment of conviction, however, is not the reason for Petitioner's being in custody.

Even if the Court had jurisdiction to entertain Petitioner's claim, he faces multiple hurdles. Unlike Santobello v. New York, 404 U.S. 257 (1971), cited by Petitioner, where the prosecutor breached a promise not to make a sentencing recomendation, in the instant case the state trial court made no representation concerning restitution. Petitioner specifically acknowledged that other than the sentencing cap and the post release

supervision term, the state trial court had not made any promises or considerations to him.  Tr. 4/13/00 at 4.  Under these circumstances the state trial court cannot be said to have beached the agreement by imposing restitution.

Even if Petitioner were to prevail, success in this case would result only in relief which strikes the restitution from the state court judgment.  As <u>United States v. Khan</u>, 869 F.2d 661 (2d Cir. 1989) demonstrates, in the context of a plea governed by Rule 11 of the Federal Rules of Criminal Procedure, where a district court merely fails to advise the accused during a plea allocution that restitution might be imposed as part of the sentence, the remedy, at the choice of the trial court, is to strike the restitution, which otherwise leaves the guilty plea intact or to vacate the plea.  <u>See</u>, <u>e.g.</u>, <u>United States v. Showerman</u>, 68 F.3d 1524, 1529 (2d Cir. 1995).[1]  Assuming <u>arquendo</u> that the same deficiency in the record would be considered of constitutional magnitude, the appropriate relief would undoubtedly be similarly limited.  The record contains nothing which remotely suggests that if put to the choice, the state trial court in this case, after consulting with the prosecutor, would vacate the plea at this late date over the issue of restitution.  In sum, Plaintiff's complaint about the imposition

---

[1]Nothing in <u>United States v. Harrington</u>, 354 F.3d 178, 186 (2d Cir. 2004), cited and relied upon by Petitioner, changes or alters this rule unless the accused demonstrates that a combination of errors in violation of Rule 11, one of which may be the district court's failure to advise of the possibility of restitution as part of the sentence, requires that the plea be vacated.

of restitution does not entitle him to withdraw his guilty plea.

Petitioner's access to relief based upon this ground has also been limited by the Appellate Division's reliance upon a procedural default in disposing of his claim and the State's invocation of that default.   Resp. Memorandum of Law (doc. #11) at 12.   To overcome the procedural default, Petitioner must demonstrate "cause" and "prejudice", both of which he attributes to ineffective assistance of counsel, infra, or actual innocence, which he claims in contradiction to his testimony at the plea allocution.   Accordingly, I turn to Petitioner's allegations of ineffective assistance of counsel.

> Where a defendant is represented by counsel during the plea process and enters a guilty plea upon his advice, a challenge to the validity of the plea based on ineffective assistance of counsel is governed by the two-part Strickland v. Washington test.   See Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).   First, defendant must show that counsel's representation fell below an objective standard of reasonableness, as determined by the range of competence required of attorneys in criminal cases. Id. at 56, 106 S.Ct. at 369.   Second, "defendant must show that there is a reasonable probability that, but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial."   Id.at 59, 106 S.Ct. at 370-71.

Tate v. Wood, 963 F.3d 20, 26 (2d Cir. 1992); accord Davis v. Greiner, 428 F.3d 81, 87 (2d Cir. 2005).   This standard assumes, of course, that Petitioner's claim(s) have been exhausted and have not been procedurally defaulted.

Although the State contends that Petiitioner's allegation concerning counsel's misinformation about his maximum exposure to incarceration has not been presented to the state courts, the affidavit in support of the first post conviction motion does

contain a vague reference to the issue. Resp. Exh. 6, Immel Aff. at 8 ¶25. As I explain, however, the claim does not entitle Petitioner to relief even if the specific supporting facts are as Petitioner alleges them, and he has alleged a lot of facts. In his affidavit in support of the first post conviction proceeding, he averred that Sugarman had told him that if he went through with the suppression hearing, he would be sentenced to sixty (60) years to life in prison. There is no averment that Sugarman characterized the time span as the maximum. Id. at 7 ¶22. In the affidavit in support of the instant amended petition, Sugarman told him that if he pursued the suppression hearing, the judge would give him the maximum sentence, without specifying what that was. Amended Pet., Immel Aff. at 6 ¶25. After he waived the suppression hearing, when Sugarman returned with the deal, she told him he would get sixty (60) years to life if he were convicted after trial; again no averment that this time span was the maximum sentence. Id. at 7 ¶29. In the affidavit in support of the first post conviction motion, he quotes Sugarman as having said, "You'll get the judge angry with you and he will sentence you to 60.", Resp. Exh. 6, Immel Aff. at 12 ¶34; again no characterization of that time span as the maximum sentence.

As the record indicates that the State was offering a plea to each defendant to one count of robbery in the first degree with a maximum sentence of twenty (20) years and contains an indictment with top counts for three separate victims, I understand how Sugarman, quite reasonably, would have told

14

Petitioner that the judge would give him sixty (60) years. Petitioner, relying on the correct statute, N.Y. Penal Law §70.02 subd. 3, which carries a maximum determinate penalty of twenty-five (25) years for robbery in the first degree, posits that he faced a maximum of only fifty (50) years calculated as twenty-five (25) for the robbery of the husband and wife, Mr. & Mrs. Ebneter, in one incident and twenty-five (25) for the robbery of another individual, Adam Troy, in a different location as one incident.  He adds that conviction for the robbery of Adam Troy was unlikely because Troy's statements to the police do not indicate how the bandits who robbed him made their escape. Memorandum of Law, 12/27/03, Exh. A.  He also asks this Court to infer through sheer speculation that the case against him with respect to Troy must have been weak otherwise the State would have asked for or insisted on a guilty plea as to that robbery as well.

I doubt that he is correct in his hypothesis and explain what underlies this conclusion in the evaluation of his complaints about Sugarman's opinions concerning his chances at trial.  I am confident that he did not want to find out for sure because he potentially faced seventy-five (75) years imprisonment premised upon one consecutive maximum sentence of twenty-five (25) years for each of the three robbery victims.  Under the decision in People v. Ramirez, 89 N.Y.2d 444, 454, 677 N.E.2d 722, 727 (1996) the gravity of the injury inflicted on the wife's retina, as differentiated from the husband who suffered a

laceration to his hand when he resisted a knife wielding assailant, may well have justified a consecutive sentence for that robbery. The Second Circuit Court of Appeals has collectively cited decisions in which New York appellate courts have sustained consecutive sentences for robberies of separate victims in a single extended transaction. Oyaque v. Artuz, 393 F.3d 99, 105-106 (2d Cir. 2004). Additionally, and perhaps more significantly, the potential maximum exposures put forth in this matter, 50, 60, 75, were sufficiently high that a deal with a maximum cap of sixteen (16) or twenty (20) years, and a real likelihood of less time, had to have been worth considering, if not extremely attactive. In fact, at the plea proceeding itself the state trial court indicated that the cap was sixteen (16) years. Tr. 4/13/00 at 4.

With respect to Sugarman's alleged opinions about the likelihood of success on the suppression motion and at trial, an attorney is obliged to advise a client of the depth of the situation that he faces. See Purdy v. United States, 208 F.3d 41, 44 (2d Cir.), cert. denied, 525 U.S. 1020 (1998); Shiwlochan v Protuondo, 345 F. Supp.2d 242, 260 (E.D.N.Y. 2004). The pressure which stems from having to contemplate this advice does not invalidate a guilty plea. See United States v. Juncal, 245 F.3d 166, 172 (2d Cir. 2001).

Relying on his medical records from the Orange County Jail (Memorandum of Law, 12/27/03, Exh. B), Petitioner reasons that if Sugarman had obtained them, she would have realized that they

corroborate his testimony concerning the assault by police officers.  I have examined them and they do not substantiate his testimony.  The record of his examination upon entry to the Orange County Jail on September 29, 1999 is largely unremarkable and contains no observations of injuries consistent with Petitioner's affidavit in support of the amended petition. Subsequently, on October 2, 1999 Petitioner complained of pains in his abdomen and reported that he had coughed up blood.  The treatment was mylanta.  The entry on the progress notes for October 6, 1999 is wholly illegible.  These records would not have given Sugarman a basis for pursuing the suppression motion. Moreover, the circumstances of Petitioner's apprehension, following a chase by vehicle and then on foot, may well have allowed the officers to testify that Petitioner was injured, if he was injured, while resisting capture.  Petitioner's statements at the plea proceeding that he was pleading guilty because he was in fact guilty and that no one had coerced or threatened him in any respect to induce the plea squarely contradicts his current allegations.   Under the circumstances, he has presented nothing which entitles him to an evidentiary hearing on this point.

With respect to counsel's opinion concerning the bleak chances of success at trial, the record substantiates that opinion and, more importantly, does not support a claim of actual innocence.  Even if Petitioner's statements had been suppressed, Sugarman was only technically correct concerning the lack of direct evidence against him at the time he decided to change his

plea.  To review, Petitioner's flight from the scene with the robbers while driving the getaway car was circumstantial evidence of a consciousness of guilt.  To present his defense, he would have had to expose himself to cross-examination during which he almost certainly would have had to explain why he didn't inform the police immediately of his ignorance of the intentions of his codefendants.  He has provided no explanation here.

Apart from circumstantial evidence of guilt, the record contains an omen of the future, an omen which Sugarman almost certainly had to have seen.  When the prosecutor offers a deal to all of the defendants, it comes with a tacit promise/threat that whoever turns first will be available as a witness against the others.  Petitioner, apparently unaware of this phenomenon, observes that only Harris implicated Petitioner in his statement to the police, which statement presumably would have been suppressed as against Harris.  However, on April 13, 2000 Boynton pled guilty to the robbery of Adam Troy, having seen the knife only after Troy had been restrained at knife point in the back of his van and thereafter when he and his codefendant got to the getaway car.  On April 13, 2000 Wade pled guilty to the robbery of Adam Troy, having acted as the lookout while two of his codefendants accomplished the robbery and with prior knowledge that they were going to commit a robbery.  Harris sat through testimony from the police concerning the apprehension of the suspects and his interrogation, following which he pled guilty on April 21, 2000.  According to Harris, on September 27, 1999 they

18

went to the Forum Diner in Middletown, whereupon the following
occurred:

> THE COURT: What happened there (referring to the Forum
> Diner).
>
> THE DEFENDANT (Johnny Harris): I sat inside the car
> with Christopher Immel, Daniel Wade. Daniel Wade and
> Anthony Boynton got out of the car, and they went over to a
> guy[, Adam Troy,] who was working with cleaning the rugs,
> and Antonio put the knife to his neck and Daniel Wade looked
> inside and me and Christopher Immel sat inside the car.
> Chris Immel pulled the car around, they jumped in, and we
> left.

Tr. 4/14-21/00 at 200. Harris put the knife in Boynton's hand, a
point Boynton had not remembered, and had anticipated a strong
arm robbery as opposed to one accomplished with a weapon.
Petitioner has not addressed the fact that following their pleas,
each of his codefendants effectively and potentially became a
witness against him.

Although the transcripts of the respective guilty pleas
obviously do not contain other evidence which the State had,
during Petitioner's sentencing proceeding, the prosecutor
referred to other circumstantial evidence which would have been
admitted and available for a jury's consideration at trial. The
prosecutor indicated that the police had recovered the personal
effects of the victims of the robberies. The effects had been
observed being tossed from the getaway vehicle during the chase.
From the getaway vehicle the police also recovered instructions,
colors, clothing and beads which, according to the prosecutor,
supported a motive of gang initiation. Petitioner's hypothesis
concerning the strength of the State's case against him fails to

19

mention this circumstantial evidence.

As against this record of the evidence against him and the potential exposure that he faced, Petitioner asks the Court to conclude that if he had been advised that the sentence would include joint and several liability with his codefendants for restitution, he would not have pled guilty and would have insisted on going to trial.  His allegation is bare and wholly contradicted by the circumstances that he faced.  "A defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial."  Parry v. Rosemeyer, 64 F.3d 110, 118 (3d Cir. 1995) (citing cases), cert. denied, 516 U.S. 1058 (1996).

The record in this case illustrates the reason why bare allegations are inadequate.  At the sentencing, after the prosecutor made the pitch for a 20 year term, she requested an order of protection and restitution similar to the sentence that had been imposed on Wade.  Sugarman then indicated that she had reviewed the medical bills, had determined that they related to the robbery which was the subject of the plea and had no objection to the figure.  Understandably, therefore, she was not about to object when the Court imposed restitution as part of the sentence.  Although the sentencing had occurred in a manner allegedly contrary to Petitioner's wishes and understanding concerning the deal he had made, when he filed his first post conviction motion, he did not allege ineffective assistance of

counsel on the basis of Sugarman's having failed to object to the restitution as part of the sentence.  Thus, even if the state trial court had been wrong in determining on the second post conviction motion that this issue had been available to be raised on direct appeal, the state trial court was not wrong in determining on the second post conviction motion that it had been procedurally defaulted for not having been raised in the first post conviction motion.  The State correctly relies on this procedural default to invoke the rule of Edwards v. Carpenter, 529 U.S. 446, 120 S.Ct. 1587(2000), which forbids a federal habeas petitioner from relying on a procedurally defaulted claim as the cause to excuse his procedural default of a different claim unless he demonstrates cause and prejudice or actual innocence.  The discussion of Petitioner's claims amply demonstrates that he is not entitled to relief for his allegations of ineffective assistance of counsel and that he has not demonstrated that he is innocent of the crime for which he stands convicted.

Petitioner, seemingly aware that an evidentiary record which would have been relevant to many of his claims was not made in the state courts, has moved this Court for appointment of counsel, an evidentiary hearing and limited discovery and has submitted proposed interrogatories and a proposed request for documents.

> "A habeas petitioner, unlike the usual civil litigant
> in federal court, is not entitled to discovery as a matter
> of ordinary course." Bracy v. Gramley, 520 U.S. 899, [904,]
> 117 S.Ct. 1793, [1796-1797,] 138 L.Ed.2d 97 (1997).  The

21

principle is embodied in Rule 6(a) of the Rules Governing
Section 2254, which provides:

> A party shall be entitled to invoke the processes of
> discovery available under the Federal Rules of Civil
> Procedure if, and to the extent that, the judge in the
> exercise of his discretion and for good cause shown
> grants leave to do so, but not otherwise.

Charles v. Artuz, 21 F. Supp.2d 168, 169 (E.D.N.Y. 1998).

> Generalized statements regarding the possible existence of
> material do not constitute "good cause." See Harris v.
> Nelson, 394 U.S. 286, 300 (1969); Linares v. Senkowski, 964
> F.2d 1295, 1296 n.1 (2d Cir.), cert. denied, 506 U.S. 986
> (1992).  Rather, a petitioner must produce specific evidence
> that the requested material exists and is relevant to his
> claim.  See Green v. Artuz, 990 F. Supp. 267, 271 (S.D.N.Y.
> 1998).

Marchese v. Senkowski, No. 97-CV-2055 (JG) (E.D.N.Y. Sept. 15,

1999) (1999 Westlaw 731011 at *15) (1999 U.S. Dist. Lexis 14462).

As Judge Sweet of this Court has observed, Rule 6 does not

license a federal habeas petitioner to engage in a fishing

expedition.  Ruine v. Walsh, No. 00 Civ. 3798 (RWS) (S.D.N.Y.

July 14, 2005) (2005 Westlaw 1668855 at *6).

Petitioner has prepared his discovery requests with the

obvious intent of litigating what might have been at issue at the

suppression hearing and to reassess the weight of the State's

case against him so as to undermine the opinions and advice

offered by Sugarman.  Hence the width and breadth of proposed

document demands to the police and the Orange County Jail.  He

apparently believes that his allegations should persuade the

Court to call Sugarman to account for her actions because he

claims that he is actually innocent.  Hence, she should respond

to interrogatories which essentially require her to relate the

contents of her meetings with Petitioner and explain everything she did and did not do in response toward the end of corroborating his testimony.  He asks his codefendants to respond to interrogatories intended to elicit testimony which supports his claim of lack of foreknowledge of their misdeeds even though he has admitted the requisite knowledge in court.

Before he may be allowed to conduct discovery, the purpose of which is to contradict his in court statements, he must explain why he pled guilty and reiterated his responsibility at the sentencing, if he in fact was innocent.  He attributes his decision to "mental coercion" applied by his attorney, who, according to his allegations: (1) overstated the maximum penalty he faced even though my review of the record discloses that she had a rational basis for the number she relied upon, which number understated the maximum penalty that he faced; (2) offered opinions about the depth of the situation he faced where the record discloses that he was likely to be convicted regardless of whether his statements were suppressed; (3) never discussed restitution with him where she agreed to it in open court on the record in the presence of Petitioner, who thereafter did not complain about counsel's failure to respond appropriately to this alleged breach of the plea agreement until his <u>second</u> post conviction application; and (4) failed to investigate his defense where the record discloses, according to him, that he did not speak truthfully to the police when he gave them a statement, told the truth to his attorney, lied to the state trial court

23

when he admitted his guilt at the plea allocution and again at
the sentencing and is now telling the truth in this proceeding.
And we are apparently supposed to believe that he never
considered whether any one of his three (3) codefendants might
turn against him in the face of a record which discloses that one
of them, Harris, specifically did so in court and where he has
failed to produce affidavits from any of them even though he knew
where they were incarcerated at the time that he filed the motion
for discovery. "To show good cause, a petitioner must provide an
affidavit setting forth specific allegations that provide the
court with 'reason to believe that the petitioner may, if the
facts are fully developed, be able to demonstrate that he is ...
entitled to relief.' _Bracy,_ 520 U.S. at 908-09 (quoting from
_Harris v. Nelson,_ 394 U.S. 286, 299 (1969))." _Lebron v. Sanders,_
No. 02 Civ. 6327 (RPP) (S.D.N.Y. Dec. 23, 2005) (2005 Westlaw
3534794 at *1). The record submitted by Petitioner does not
satisfy this standard. Other than his say so, it contains
nothing which suggests that the discovery sought will produce
anything which supports his claims.

Pending my study of the claims presented, I did not rule on
Petitioner's application for appointment of counsel. Having
found that it does not raise any complex factual or legal issues
and that a hearing is not necessary to adjudicate it, I have
determined that appointment of counsel would not be likely to
lead to a more just determination in this case and have proceeded
accordingly to render this report and recommendation.

Based on the foregoing, I respectfully recommend that your Honor deny all pending motions and dismiss this Petition.

## NOTICE

Pursuant to 28 U.S.C. §636(b)(l), as amended, and Rule 72(b), Fed.R.Civ.P. the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(e), Fed.R.Civ.P., or a total of thirteen (13) working days, (see Rule 6(a), Fed.R.Civ.P.), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Colleen McMahon at the United States Courthouse, 500 Pearl Street Room 640, New York, New York 10007 and to the chambers of the undersigned at the United States Courthouse, 300 Quarropas Street Room 434, White Plains, New York, 10601.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order or judgment that will be entered by Judge McMahon.  See Thomas v. Arn, 474 U.S. 140 (1985); Frank v. Johnson, 968 F.2d 298 (2d Cir.), cert. denied, 506 U.S. 1038 (1992); Small v. Secretary of H.H.S., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); Wesolek v. Canadair, Ltd., 838 F.2d 55, 58 (2d Cir. 1988).  Requests for

extensions of time to file objections must be made to Judge

McMahon and should <u>not</u> be made to the undersigned.

Dated: January 24, 2007
White Plains, New York

Respectfully submitted,

Mark D. Fox
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Report and Recommendation have been
sent to the following:

The Honorable Colleen McMahon

Mr. Christopher Immel (00-A-4027)
Coxsackie Correctional Institution
P.O. Box 999
Coxsackie, New York 12051

Andrew R. Kass, Esq.
Assistant District Attorney
County Government Center
Goshen, New York 10924

26